**IN THE COURT OF APPEALS OF IOWA**

No. 15-1303
Filed August 17, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MATTHEW ALAN ONSTAD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Allamakee County, Richard D.
Stochl, Judge.


        Matthew Onstad appeals following his guilty plea to a serious
misdemeanor, asserting violations of the Iowa Rules of Criminal Procedure, as
well as the United States Constitution and the Iowa Constitution.  **AFFIRMED.**


        Karl G. Knudson, Decorah, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant
Attorney General, for appellee.


        Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Matthew Onstad appeals following his guilty plea to a serious misdemeanor, asserting violations of the Iowa Rules of Criminal Procedure, as well as the United States Constitution and the Iowa Constitution. We affirm.

### I. Background Facts and Proceedings.

In October 2014, Onstad was charged by trial information with three criminal counts: (I) first-degree burglary, (II) child endangerment, and (III) domestic abuse assault causing bodily injury. Regarding count III, the trial information accused Onstad of violating Iowa Code section 708.2A(1) and (2)(b) (2013) as follows:

> [Onstad], on or about October 9, 2014, . . . did without justification, an act which was intended to cause pain or injury to or which was intended to result in physical contact which would be insulting or offensive to [the complaining witness] with whom he shares a child,[1] coupled with the apparent ability to execute the act, and in doing so did cause bodily injury to [the mother].

The minutes of testimony filed therewith stated the mother would testify Onstad

> is the biological father of her [youngest child]. [The mother] will testify that on October 9, 2014, she was at her residence with her three children when [Onstad] came to her home in a very aggressive manner as he was spitting and yelling obscenities. She will testify that she told [Onstad] multiple times to leave the residence. . . . She will testify that she ran to the corner of the kitchen and [Onstad] trapped her and grabbed her by her hair and threw her down to the ground with their [child] in her hands. She will testify that she and [their child] hit the floor and her arm broke most of the fall, but [their child's] forehead hit the floor very hard, causing immediate bruising and a large bump.
> . . . She will testify that she ran upstairs where the phone was and called 911.

---

[1] We will refer to the complaining witness as "the mother" hereinafter.

The minutes further stated an officer would testify he was dispatched to a residence "regarding a domestic dispute." After talking to the mother at the residence, he observed "[their child] was crying and had a visible bump and contusion on [the] head." He would also testify the mother "had several visible bruises on her body," and "there was an indication of an altercation in the kitchen as items were strewn throughout the floor."

Ultimately, Onstad entered into a plea agreement with the State. In the agreement, Onstad stated he was thirty-six years old, had his GED, and was "able to read, write and speak the English language." He acknowledged that he "should not initial any paragraph in this document if [he did] not understand the paragraph or [if] any part of its contents [were] incorrect." Onstad placed his initials at the end of each numbered paragraph and all subparts. At the end of the document, Onstad indicated that, "[h]aving read and completed this entire form, [he] respectfully ask[ed] that the Court waive [his] presence for purpose of pleading guilty," and he "consent[ed] to and affirmatively request[ed] that the Court accept this written plea of guilty." He then signed the document.

The specific terms of the agreement were set out as follows:

> A. I will plead guilty to Count III, domestic abuse assault, a serious misdemeanor, in violation of Iowa Code [§] 708.2A(1) and 708.2A(2)(b), and Counts I and II will be dismissed.
> B. I will be assessed a criminal fine of $315 along with a surcharge of 35%.
> C. I will be sentenced to up to one year in jail with all but 20 days suspended, and I will be given credit for time already served.
> D. I will be placed on formal probation for up to one year.
> E. A condition of my probation will be that I will be required to attend mental health counseling and medication management as recommended by my mental health professionals. I will also be required to attend the Batterer's Education Program or a similar program under the laws of another state.

> F. I will be able to make monthly payments of at least $50 and/or complete community service to satisfy any monies owed to the Court.
>
> G. I will not be required to reimburse the State for court appointed attorney fees because I am not reasonably able to afford any reimbursement.
>
> H. Any and all companion charges will be dismissed at my cost.

Onstad placed his initials at the end of each of these paragraphs.

In other initialed paragraphs, Onstad admitted he had "received a copy of the [t]rial [i]nformation before being called upon to plead," he had read the trial information and the minutes of testimony or had them read to him, and he had discussed the matter with his lawyer. Additionally, Onstad affirmed that the contents of the minutes of testimony were "substantially correct." Onstad averred: "I fully understand the charge(s) against me." He acknowledged "[n]o other defenses other than a general denial [were] available." He also stated:

> I am aware that any agreement made . . . does not bind the Court unless I state the Court's concurrence is required. If the Court's concurrence is required, the Judge will inform me whether the Court accepts the agreement or rejects it before accepting my guilty plea. I know that if the Judge rejects the agreement, that the Court may impose a sentence less favorable than that contemplated in the agreement. I also understand that if the Court rejects the agreement, I have the right to enter a not guilty plea.

The agreement did not expressly contain a condition that the court's concurrence with the terms of the agreement was required to bind the court to the agreement's terms.

Onstad's counsel also filed a professional statement regarding Onstad's plea agreement, stating the attorney "read and fully explained to [Onstad] the allegations in the [trial information] . . . and carefully reviewed with [Onstad] the [m]inutes of [t]estimony attached to the [i]nformation." The attorney also opined

that Onstad's guilty plea was "voluntarily and understandingly made and there [was] a factual basis for the Court's accepting the plea of guilty."

Onstad also signed a waiver of presence for guilty plea and sentence. In it, he stated he understood his right to be present at his plea of guilty and sentencing, but he informed the court he "[did] not wish to be personally present for either [his] plea of guilty or [his] sentencing" and requested "that the Court accept [his] plea of guilty and impose sentence in [his] absence."

Thereafter, the district court entered its order accepting Onstad's guilty plea.[2] The court judged Onstad guilty on count III and sentenced Onstad consistent with the plea agreement but for one exception; instead of one year of probation, the court placed Onstad on probation "for a period of 1–2 years subject to rules and conditions of probation." The court stated its reasons for the sentence was that this sentence "[was] most likely to protect society and rehabilitate [Onstad] based upon the nature of the offense, [Onstad's] prior record, and the recommendation of the parties and the [presentence investigation report]."

Onstad now appeals.

## II. Scope and Standards of Review.

We review a claim of error in a guilty-plea proceeding for correction of errors at law. *See State v. Fisher*, 877 N.W.2d 676, 680 (Iowa 2016); *see also* Iowa R. App. P. 6.907. However, we review sentencing orders for an abuse of discretion. *See State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). Constitutional

---

[2] The district court's order states Onstad appeared in person, but in view of Onstad's waiver of presence it is unclear whether this was so.

claims are reviewed de novo. *See State v. Jackson*, 878 N.W.2d 422, 428 (Iowa 2016).

### III. Discussion.

Onstad argues his guilty plea was defective and, as a result, the court erred in accepting the plea and his attorney rendered ineffective assistance in permitting him to submit the plea. Onstad also challenges the constitutionality of his waiver of an in-court colloquy. Finally, Onstad maintains the court's failure to abide by the terms of the plea agreement violated Iowa Rule of Criminal Procedure 2.10 and his due process rights under the constitutions of the United States and Iowa. We address his arguments in turn.

### A. Plea Agreement.

Onstad asserts his guilty plea was defective in two respects: (1) it did not explicitly "inform him that in order to convict him of domestic abuse assault, the [S]tate must prove not only an assault, but also that the assault involved 'domestic abuse' as defined in Iowa Code [section] 236.2(2)," and (2) it "did not explain that the acts which constitute assault are subject to the defense of justification, and the plea record did not show that Onstad knowingly waived that potential defense." Based upon these alleged deficiencies, Onstad asserts he could not have intelligently or voluntarily entered into the agreement, demonstrating both that the court erred in accepting the plea and that his attorney rendered ineffective assistance in allowing him to submit the plea.

### 1. Rule 2.8.

To comport with the mandates of the Due Process Clause, a guilty plea must be voluntary, meaning "the plea must not only be free from compulsion, but

must also be knowing and intelligent." *State v. Loye*, 670 N.W.2d 141, 150 (Iowa 2003) (citation omitted). This requires that a defendant "be conscious of 'the nature of the crime with which he is charged.'" *Id.* at 151 (citation omitted). This principle is codified in Iowa Rule of Criminal Procedure 2.8(2)(b). *See id.* If the court fails to substantially comply with rule 2.8(2)(b), the defendant's conviction and sentence must be set aside. *See Fisher*, 877 N.W.2d at 684-85; *Loye*, 670 N.W.2d at 151. But if the court substantially complies with the rule, the defendant can only challenge the guilty plea "under the rubric of ineffective assistance of counsel." *Fisher*, 877 N.W.2d at 682 n.3.

Rule 2.8(2)(b) "requires the court to 'address the defendant personally in open court and inform the defendant of, and determine that the defendant understands'" the concepts stated in the rule's subparagraphs, *id.* at 682 (quoting Iowa R. Crim. P. 2.8(2)(b)(2)), including the "nature of the charge to which the plea is offered," Iowa R. Crim. P. 2.8(2)(b)(1). Thus, the rule has two separate components: (1) the in-court colloquy and (2) the determination that the defendant is informed. *See State v. Meron*, 675 N.W.2d 537, 543 (Iowa 2005). However, rule 2.8(2)(b)(5) expressly allows the court, "in its discretion and with the approval of the defendant," to "waive the above *procedures* in a plea of guilty to a serious or aggravated misdemeanor." *Id.* (emphasis added) (quoting Iowa R. Crim. P. 2.8(2)(b)). Consequently:

> Although the court in guilty pleas to serious and aggravated misdemeanors can waive the in-court colloquy component, the rule still requires substantial compliance with the requirement that the defendant be informed. The waiver language of rule 2.8(2)(b) only means the full in-court colloquy can be waived and the written plea can serve to establish substantial compliance with the rule.

*Id.* Yet, rule 2.8(3) goes on to state that a "verbatim record of the *proceedings* at which the defendant enters a plea shall be made." (Emphasis added.)

Here, Onstad pled guilty to a serious misdemeanor. Consequently, the in-court-colloquy component of rule 2.8(2)(b) could be waived if Onstad approved and the court allowed it. *See* Iowa R. Crim. P. 2.8(2)(b)(5). In the plea agreement, Onstad indicated he understood he had "a right under the Rules of Criminal Procedure to have the Judge address [him] personally in open court to discuss [his] understanding of all of the matters set out in this written plea" and that he was giving up his "right under that Rule by signing this written guilty plea." Furthermore, in his waiver of presence for guilty plea and sentence Onstad stated he understood his right to be present at his plea of guilty and sentencing. He informed the court he "[did] not wish to be personally present for either [his] plea of guilty or [his] sentencing" and requested "that the Court accept [his] plea of guilty and impose sentence in [his] absence."

### i. In-Court-Colloquy Component.

Onstad does not dispute that he assented to the guilty plea and his waiver of an in-court colloquy. Rather, he suggests that a rule 2.8(2)(b)(5) waiver should not be allowed and instead a verbatim record as contemplated in rule 2.8(3) be created. Stated another way, he advocates that rule 2.8(3) should not be allowed to be waived. We have not the power nor the inclination to interpret rule 2.8(3) as trumping rule 2.8(2)(b)(5). *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").

First, a defendant who enters a plea of guilty waives certain constitutional rights. *See Kyle v. State*, 364 N.W.2d 558, 561 (Iowa 1985). It would be incongruous for the criminal rules to allow a defendant to waive constitutional rights, as set forth in rule 2.8(2)(b), but not allow a defendant to waive the right by rule to a verbatim record. *See State v. Hinners*, 471 N.W.2d 841, 845 (Iowa 1991) ("We too think that if a defendant can waive such important constitutional rights, the defendant ought to be able to waive a lesser statutory right such as the right of appeal."). Moreover, the Iowa Supreme Court has clearly approved of the waiver of an in-court colloquy in such cases. *See Meron*, 675 N.W.2d at 543 (discussing *State v. Kirchoff*, 452 N.W.2d 801, 805 (Iowa 1990) and stating, "In *Kirchoff* . . . we said that the requirements for the court to personally address a defendant to cover the necessary areas of inquiry—now listed under rule 2.8(2)(b)—could be satisfied in cases involving pleas of guilty to serious and aggravated misdemeanors by supplementing the in-court colloquy with a written plea that tracked with the language of the rule"). If there is no in-court colloquy, there is no proceeding from which a "verbatim record" could be created. For that reason, a waiver pursuant to rule 2.8(2)(b)(5) necessarily results in a waiver of rule 2.8(3). We therefore turn to the alleged deficiencies in the plea.

### ii. The Determination that Onstad was Informed.

As noted above, waiving the in-court colloquy in misdemeanor cases does not absolve the court from ensuring "each plea is voluntary, intelligent, and supported by facts." *Meron*, 675 N.W.2d at 543. It only means the court may use a defendant's written acknowledgement in making its required determination. *See id.*

The plea agreement, signed and initialed by Onstad, stated he would "plead guilty to Count III, domestic abuse assault, a serious misdemeanor, in violation of Iowa Code [section] 708.2A(1) and 708.2A(2)(b)." Iowa Code section 708.2A(1) specifically states that, "[f]or the purposes of [chapter 708], 'domestic abuse assault' means an assault, as defined in section 708.1, which is domestic abuse as defined in section 236.2, subsection 2, paragraph 'a', 'b', 'c', or 'd.'" Section 708.1(2) provides that a

> person commits an assault when, without justification, the person does any of the following:
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

Section 236.2(2)(c) defines domestic abuse assault as an assault "between persons who are parents of the same minor child, regardless of whether they have been married or have lived together at any time."

The plea agreement informed Onstad the elements of the crime were:

> On or about October 9, 2014 . . . :
> 1. I committed an act which was intended to cause pain or injury to, result in physical contact which was insulting or offensive, or place [the mother] in fear of immediate physical contact which would have been injurious, insulting or offensive to [the mother],
> 2. I had the apparent ability to do the act, and
> 3. My actions cause a bodily injury or mental illness to [the mother].

Onstad asserts this was deficient because it failed to specifically state that the State had to prove there was a domestic relationship between him and the mother. He argues that "[b]ecause neither the written guilty plea nor any other

record in the file shows that this legal term had been explained to Onstad and that he understood it, the record does not show substantial compliance" with rule 2.8(2)(b), and his plea, as a result, was not voluntary. Similarly, Onstad maintains the lack of the reference to the defense of justification, contemplated by section 708.1, resulted in the agreement being deficient.

In determining whether a court has adequately informed a defendant of the rule 2.8(2)(b) advisories, we apply a substantial compliance standard. *See State v. Sutton*, 853 N.W.2d 284, 288 (Iowa Ct. App. 2014) (discussing *Loye*, 670 N.W.2d at 151). Concerning the 2.8(2)(b)(1) requirement that the defendant know and understand the nature of the charge to which the plea is offered, if it is apparent in the circumstances the defendant understood the nature of the charges against him, the court "need not review and explain each element of the crime." *Id.* (citation omitted).

Reviewing the plea agreement in its entirety, along with the trial information and the minutes of testimony, it is apparent in the circumstances that Onstad understood the nature of the charges against him, including that the State would have to establish a domestic relationship between Onstad and the mother. The crime charged was "domestic abuse assault." The trial information clearly asserted Onstad shared a child with the mother, and Onstad does not dispute that fact. Moreover, Onstad does not assert he did not know or understand the nature of the charge against him, only that *the court failed inquire* if he knew or understood the "domestic" element of the crime, given it was not explicitly set out in the plea agreement. Upon our review, we find the detailed agreement substantially complied with rule 2.8(2) in this respect.

As to the potential justification defense, we question whether this is truly an element of the offense. Nevertheless, even assuming without deciding justification should have been stated as an element of the crime in the plea agreement, the court was not required to "review and explain each element of the crime" to Onstad. *See id.* (citation omitted). The trial information included the term "without justification," and Onstad acknowledged in the plea agreement that, other than a general denial, no other defenses were available. Onstad does not argue he was justified in his actions. In fact, he admitted in the plea agreement that there was a factual basis for his plea *and* his description of the events, which—as stated in the elements of the crime in the plea agreement— "accurately describe[d] what happened in all significant aspects." He instead argues, because of the absence of that explicit statement in the plea agreement, the court failed to inquire as to whether Onstad knew or understood the potential applicability of a justification defense. Upon our review, we find the detailed agreement substantially complied with rule 2.8(2) in this respect.

The court did not err in accepting the plea agreement because it substantially complied with the requirements of section 2.8(2)(b) and determined Onstad's guilty plea was voluntary, intelligent, and supported by facts. We affirm on this issue.

### 2. Ineffective-Assistance-of-Counsel Claim.

Onstad also asserts his counsel was ineffective in allowing him to plead guilty on "a record which did not comply with due process requirements of [rule] 2.8(2)(b) and the Iowa and U.S. Constitutions; and in allowing him to waive his right to file a Motion in Arrest of Judgment." To establish his claim of ineffective

assistance of counsel, Onstad "must demonstrate (1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Ordinarily, "[w]hen a defendant seeks to have an ineffective-assistance claim resolved on direct appeal, the defendant must establish that the record is adequate to allow the appellate court to determine the issue. If the record is inadequate on appeal, the issue must be addressed in an action for postconviction relief."[3] *State v. Thacker*, 862 N.W.2d 402, 405 (Iowa 2015) (citation omitted). The record here is adequate.

The district court substantially complied with the requirements of rule 2.8(2)(b), and therefore Onstad's counsel had no duty to assert a meritless claim. *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015) ("Counsel does not fail to perform an essential duty by failing to raise a meritless objection."). Because we preclude relief if we find either prong—duty or prejudice—lacking, *see id.*, Onstad's ineffective-assistance-of-counsel claim on this issue fails.

### B. Sentencing.

Finally, Onstad maintains the plea agreement was conditioned upon the court's concurrence in regard to his sentence, and the court's deviation from the

---

[3] Onstad also requests the court's holding in *Straw* be overturned and that we require "that prejudice . . . be presumed in a direct appeal where ineffective counsel allows a guilty plea to be submitted on a deficient record which does not show compliance with voluntariness criteria required [rule] 2.8(2)(b) and constitutional due process." Because we address Onstad's ineffective-assistance-of-counsel claim on direct appeal, and because we have no authority to reverse *Straw*, we do not address the issue further. *See Miller*, 841 N.W.2d at 584 n.1 ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

probationary term of one year to "a period of 1–2 years" violated Iowa Rule of Criminal Procedure 2.10 and his due process rights. Under rule 2.10(2):

> If a plea agreement has been reached by the parties the court shall require the disclosure of the agreement in open court at the time the plea is offered. Thereupon, if the agreement is conditioned upon concurrence of the court in the charging or sentencing concession made by the prosecuting attorney, the court may accept or reject the agreement, or may defer its decision as to acceptance or rejection until receipt of a presentence report.

Additionally:

> When the plea agreement is conditioned upon the court's concurrence, and the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement or another disposition more favorable to the defendant than that provided for in the plea agreement.

Iowa R. Crim. P. 2.10(3).

The plea agreement specifically states Onstad was aware his agreement concerning the charge against him and his sentence "does not bind the Court unless I state the Court's concurrence is required." Nowhere in the agreement does Onstad state the court's concurrence is required. Onstad does not seem to dispute this but points to a provision of the agreement which states, "I understand the complete agreement to be as follows: . . . I will be placed on formal probation for up to a year." Onstad asserts use of the word "will" meant the agreement was conditioned upon the court's concurrence. This is insufficient under the language of the plea agreement. *See State v. Thompson*, 856 N.W.2d 915, 922 (Iowa 2014); *see also State v. Porter*, No. 13-0463, 2013 WL 6700301, at *2 (Iowa Ct. App. Dec. 18, 2013). While it might be a better practice to explicitly state in plea agreements whether the agreement is or is not conditioned upon the court's

concurrence, the absence of such statement under the terms of this agreement means the agreement was not so conditioned. Accordingly, the court did not abuse its discretion when it deviated from the sentence set forth in the plea agreement.

### IV. Conclusion.

The court did not err in accepting the plea agreement because it substantially complied with the requirements of section 2.8(2)(b) and properly determined Onstad's guilty plea was voluntary, intelligent, and supported by facts. Onstad's ineffective-assistance-of-counsel claim premised upon rule 2.8(2) fails for the same reasons. Finally, the sentencing court did not abuse its discretion in deviating from the sentence set forth in the plea agreement because the agreement was not conditioned upon the court's concurrence with the agreement. We therefore affirm Onstad's conviction and sentence.

**AFFIRMED.**